James M. Rickher
Plaintiff, Pro Se
5161 SW Cameron Rd.
Portland, OR 97221
(510) 418-3996
rickher.james@gmail.com

FILED24 MAR '26 14:51 USDC·ORP

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

### PORTLAND DIVISION

3:26-CV-569-AR

**JAMES M. RICKHER,**

Plaintiff,

v.

**MEGAN SULLIVAN,** in her official capacity as

Acting Chief, Office of Design Management,

United States Mint; and

**SCOTT BESSENT,** in his official capacity as

Secretary of the Treasury,

Defendants.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF — Rickher v. Sullivan, et al.    1

#116157

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

### I. INTRODUCTION

1. This action challenges the United States Mint's approval and imminent issuance of a 24-karat gold commemorative coin bearing the likeness of President Donald J. Trump, a living individual, in violation of 31 U.S.C. § 5114(b).

2. Federal law is unambiguous: "Only the portrait of a deceased individual may appear on United States currency and securities." 31 U.S.C. § 5114(b). This categorical prohibition has governed United States coinage since its enactment in 1866.

3. On or about March 20, 2026, the United States Commission of Fine Arts approved the final design for a 24-karat gold coin bearing President Trump's image. The coin was designed using an official White House photograph now displayed at the Smithsonian National Portrait Gallery. Secretary Bessent personally presented design options to President Trump, who selected the final design. Acting Chief Sullivan presented the approved design to the Commission.

4. The Mint has publicly confirmed it intends to proceed with production under the purported authority of 31 U.S.C. § 5112(i)(1)(C), which grants the Secretary discretion over "procedures and coin specifications, designs, varieties, quantities, denominations, and inscriptions" for certain gold bullion and proof coins. That discretionary authority does not, and cannot, override the categorical prohibition in § 5114(b).

5. Defendants' attempt to use § 5112's design-discretion provision to circumvent absolute prohibition on depicting living persons in § 5114(b) contravenes basic principles of statutory construction. A specific substantive prohibition controls over a general grant of discretion. The two provisions must be read in harmony, and § 5114(b) forecloses the course Defendants have chosen.

6. Once the coin is produced and issued, it cannot meaningfully be recalled. Plaintiff seeks declaratory and injunctive relief, including a preliminary injunction, to prevent irreparable harm before that occurs.

## II. JURISDICTION AND VENUE

7. This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 (federal question).

8. Declaratory relief is authorized under 28 U.S.C. §§ 2201–2202.

9. This action arises under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701–706, and presents a pure question of statutory interpretation for de novo review. See Loper Bright Enterprises v. Raimondo, 603 U.S. 369 (2024).

10. Venue is proper in this District under 28 U.S.C. § 1391(e)(1) because Plaintiff resides in Portland, Oregon.

## III. PARTIES

11. Plaintiff James M. Rickher is a United States citizen residing in Portland, Oregon. He is a novice collector of United States numismatic coins, who occasionally purchases, handles, and holds official United States coinage as part of an established collecting practice. Plaintiff has a concrete, particularized interest in ensuring that United States coinage complies with the statutory requirements governing the issuance of currency. Plaintiff will be directly and imminently affected by the unlawful issuance of the Trump gold coin, which, as legal tender bearing a denomination, will enter the official coinage system of the United States.

12. Plaintiff brings this action pro se.

13. Defendant Megan Sullivan is the Acting Chief of the Office of Design Management at the United States Mint. In that capacity, she presented the approved coin design to the Commission of Fine Arts on March 20, 2026, and represented that Secretary Bessent had authorized production. She is sued in her official capacity.

14. Defendant Scott Bessent is the Secretary of the Treasury. He authorized the Trump gold coin under 31 U.S.C. § 5112 and personally presented design options to President Trump. He is sued in his official capacity.

## IV. STATUTORY AND HISTORICAL BACKGROUND

15. The prohibition on depicting living persons on United States money originates from an Act of Congress in 1866, enacted in direct response to Treasury Secretary Salmon P. Chase's placement of his own likeness on federal currency during the Civil War. Congress found that practice inconsistent with republican values and democratic norms, and enacted a categorical rule to prevent its recurrence.

16. Congress deliberately excluded executive discretion from this domain by establishing an absolute prohibition. The statute does not permit the Secretary to grant exceptions; it contains no waiver authority.

17. The modern codification, 31 U.S.C. § 5114(b), provides: "Only the portrait of a deceased individual may appear on United States currency and securities."

18. A separate provision, 31 U.S.C. § 5112(i)(1)(C), grants the Secretary broad discretion over "program procedures and coin specifications, designs, varieties, quantities, denominations, and inscriptions" for certain gold bullion and proof coins.

19. The discretionary design authority in § 5112 does not confer authority to override the absolute prohibition in § 5114(b). Under foundational canons of statutory construction: (a) a specific provision controls over a general one; (b) statutory provisions must be read in harmony so that each has effect; and (c) a general grant of discretionary authority does not impliedly repeal a specific substantive prohibition. Morton v. Mancari, 417 U.S. 535, 550–51 (1974); RadLAX Gateway Hotel, LLC v. Amalgamated Bank, 566 U.S. 639, 645 (2012).

20. Commemorative gold coins authorized or issued under § 5112 bear a denomination, are issued as legal tender, and constitute part of the official coinage of the United States. As such, they fall within the scope of "United States currency and securities" for purposes of § 5114(b).

21. No Act of Congress authorizes the issuance of a coin bearing the likeness of a living individual, and no provision of law purports to exempt gold commemorative coins from § 5114(b)'s prohibition.

22. Defendants are expected to argue that the Trump coin falls outside § 5114(b) because it is a "gold bullion" or "proof coin" sold at a premium above face value, not intended for ordinary circulation, and therefore not "currency" in the practical sense the prohibition was meant to address. That argument fails on the statutory text and on the law.

23. Section 5114(b) prohibits living persons' portraits on "United States currency and securities." It does not say "circulating currency," "everyday currency," or "coins intended for general commerce." Congress used the broader term "currency," without qualification. Where Congress intends to limit a provision to circulating coinage, it does so expressly. See, e.g., 31 U.S.C. § 5112(a) (enumerating "coins" the Secretary "may mint and issue" for circulation). The absence of any such limitation in § 5114(b) is dispositive. Courts must give effect to the plain text and may not engraft limitations Congress did not write. Lamie v. United States Trustee, 540 U.S. 526, 534 (2004).

24. As a matter of law, all United States coins, including gold bullion and proof coins issued under § 5112, are legal tender. 31 U.S.C. § 5103 ("United States coins and currency . . . are legal tender for all debts, public charges, taxes, and dues"). A coin's market price above its face value does not alter its legal status. A $50 American Eagle gold coin that sells for $2,500 is still, by law, legal tender for $50. The Trump coin will bear a denomination assigned under § 5112 and will be legal tender upon issuance. It is United States currency within the meaning of § 5114(b) from the moment it is struck. The practical consequence is concrete: a holder of the Trump coin could present it to any bank in the United States and receive the face value credited to their account on deposit. The institution would be legally obligated to accept it as currency *at that denomination*. No collector premium, no gold spot price, and no characterization of the coin as a "bullion product" alters that legal reality. The coin is currency because the law says it is currency — and § 5114(b) applies to it on that basis.

25. The bullion-coin characterization also proves too much. If Defendants' theory were correct, that § 5112's discretionary gold coin authority wholly displaces § 5114(b) —

then the Secretary could place any living person's portrait on any gold bullion coin at any time, rendering the 160-year-old prohibition entirely inoperative as to an entire category of official United States coinage. That result is irreconcilable with basic principles of statutory coherence and with Congress's manifest intent in enacting § 5114(b).

26. The only prior instance of a sitting president appearing on a United States commemorative coin was Calvin Coolidge in 1926. That instatnce drew significant controversy and the coins were largely withdrawn from circulation. The "Coolidge coin" does not establish a legal precedent permitting the current action, and Defendants have not identified any congressional authorization for Coolidge's coin that would carry forward to authorize the present one.

### V. STANDING

27. Plaintiff has standing under Article III of the Constitution. He suffers a concrete, particularized, and actual injury fairly traceable to Defendants' conduct and redressable by this Court.

28. Plaintiff is a novice collector of United States numismatic coins and occasionally acquires, holds, and transacts in official United States coinage. The issuance of a coin that violates the express prohibition of 31 U.S.C. § 5114(b) directly injures Plaintiff's legally cognizable interest in the lawfulness of United States currency — an interest that goes beyond a generalized grievance and is tied to Plaintiff's concrete numismatic activity.

29. Plaintiff's injury is imminent. The Commission of Fine Arts approved the final coin design on March 20, 2026. Acting Chief Sullivan confirmed the Mint will proceed with a "very limited production run," and production is expected to commence immediately. The coin is targeted for issuance in connection with the nation's Semi-quincentennial on July 4, 2026.

30. The injury is fairly traceable to Defendants' decision to authorize and produce the coin in violation of § 5114(b).

31. The injury would be redressed by declaratory and injunctive relief halting production and issuance.

## VI. FACTUAL ALLEGATIONS

32. The United States Mint operates under the authority of the Department of the Treasury.

33. The Office of Design Management, headed by Defendant Sullivan, is responsible for developing and approving coin designs.

34. In or around late 2025, the Treasury Department began developing designs for a gold commemorative coin bearing the image of President Trump to commemorate the nation's 250th anniversary.

35. The proposed coin is based on an official White House photograph of President Trump taken by his chief White House photographer, which was displayed at the Smithsonian National Portrait Gallery beginning March 19, 2026, one day before the Commission approved the design.

36. Secretary Bessent personally presented coin design options to President Trump. Trump selected the final design. Sullivan confirmed: "It is my understanding that the secretary of the Treasury presented this design, as well as others, to the president and these were his selection."

37. The Citizens Coinage Advisory Committee ("CCAC"), the bipartisan advisory panel that normally reviews new coin designs, declined to consider the proposed Trump coin. CCAC members raised concerns that placing a sitting president on currency would break with longstanding democratic norms and potentially violate federal law.

38. On March 20, 2026, the Commission of Fine Arts, comprised exclusively of Trump appointees, approved the final coin design unanimously and without objection.

39. The composition and recent history of the Commission that approved the coin design warrants particular note. Prior to October 2025, the Commission consisted of six members appointed during President Biden's administration. On or about October 28,

2025, President Trump summarily terminated all six sitting members by email, with the White House stating it intended to install members "more aligned with President Trump's America First Policies." The Commission remained entirely vacant and unable to conduct business for approximately three months. Beginning January 14, 2026, President Trump appointed seven new members — Mary Anne Carter, Rodney Mims Cook Jr., Chamberlain Harris, Roger Kimball, James C. McCrery II, Pamela Hughes Patenaude, and Matthew Taylor — all of whom serve at his pleasure. The formal announcement of all seven appointments was made January 30, 2026. The reconstituted Commission held its first meeting on January 22, 2026; less than ten weeks before it unanimously approved the Trump coin design on March 20, 2026. Among those voting to approve the coin was Commissioner Chamberlain Harris, who at the time of the vote was simultaneously serving as a special assistant to President Trump and deputy director of his Oval Office. The Commission vote was unanimous and without objection.

40. The approved design features Trump in a suit and tie, leaning forward with fists on a desk, with "LIBERTY" arced across the top, "1776–2026" below, "IN GOD WE TRUST" at the bottom, and thirteen stars. The reverse features a bald eagle in midflight.

41. Acting Chief Sullivan confirmed that the coin will be issued in a "very limited production run," and that its denomination and precise size have not yet been finalized, though the Mint is considering a size larger than its standard one-ounce gold coin.

42. U.S. Treasurer Brandon Beach confirmed in a public statement that the Mint intends to proceed with production.

43. Defendants have acknowledged that federal law generally bars living individuals from appearing on United States currency. Defendants have nonetheless proceeded under the theory that § 5112's grant of design discretion to the Secretary for gold bullion and proof coins authorizes the depiction of a living person, notwithstanding § 5114(b)'s contrary command.

44. The coin, once issued, will constitute official United States legal tender and will form part of the official coinage of the United States.

## VII. FIRST CLAIM FOR RELIEF

### Violation of the APA — Agency Action Contrary to Law

### 5 U.S.C. § 706(2)(A), (C)

45. Plaintiff realleges and incorporates paragraphs 1 through 44.

46. The Commission of Fine Arts' approval of the coin design on March 20, 2026, and Defendants' decision to proceed with production and issuance under Secretary Bessent's authorization, constitute final agency action within the meaning of 5 U.S.C. § 704. The decision-making process is consummated; legal consequences, i.e. production and issuance, will flow directly from it. Bennett v. Spear, 520 U.S. 154, 177–78 (1997).

47. Defendants' approval and intended issuance of the Trump gold coin is contrary to law under 31 U.S.C. § 5114(b), in excess of statutory authority, and therefore unlawful under 5 U.S.C. § 706(2)(A) and (C).

48. Section 5112's grant of design discretion does not authorize, and cannot be read to authorize, a design that violates the categorical prohibition of § 5114(b). The Secretary's discretion to prescribe coin "designs" is necessarily exercised within the constraints of other applicable law, including § 5114(b). A general grant of discretion does not impliedly repeal a specific substantive prohibition enacted to protect a structural constitutional value. See Morales v. Trans World Airlines, Inc., 504 U.S. 374, 384–85 (1992).

49. Plaintiff is entitled to relief under the APA, including the vacating of any agency action taken in furtherance of the coin's issuance.

/ / /

## VIII. SECOND CLAIM FOR RELIEF

### Ultra Vires Agency Action

### Non-Statutory Review

50. Plaintiff realleges and incorporates paragraphs 1 through 49.

51. Federal officers acting beyond the scope of authority granted by Congress may be enjoined as acting ultra vires. Larson v. Domestic & Foreign Commerce Corp., 337 U.S. 682, 689–91 (1949); Dugan v. Rank, 372 U.S. 609, 621–22 (1963); Chamber of Commerce of the United States v. Reich, 74 F.3d 1322, 1328 (D.C. Cir. 1996).

52. By authorizing a coin bearing the likeness of a living person in direct contravention of 31 U.S.C. § 5114(b), Defendants have acted beyond the limits of any authority conferred by Congress. No statute authorizes the Secretary to override § 5114(b), and the Secretary's general design discretion under § 5112 does not constitute such authority.

53. Defendants' actions are ultra vires and subject to injunctive relief on that independent basis.

## IX. IRREPARABLE HARM

54. Defendants' unlawful action is causing and will continue to cause irreparable harm.

55. Once struck, distributed, and placed into the stream of commerce, the coins cannot practicably be recalled. The harm from the issuance of unlawful currency, including erosion of the statutory safeguard Congress enacted to prevent the executive branch from using sovereign instruments of value for political self-promotion, cannot be adequately remedied after the fact.

56. There is no adequate remedy at law.

## X. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

A. Declare that Defendants' approval and intended issuance of a 24-karat gold coin bearing the likeness of President Donald J. Trump violates 31 U.S.C. § 5114(b) and exceeds Defendants' statutory authority;

B. Temporarily restrain and preliminarily, and then permanently, enjoin Defendants from producing, distributing, issuing, or selling any coin bearing the likeness of any living individual, including President Trump;

C. Set aside as unlawful any agency action taken in furtherance of the approval, production, or issuance of such coin;

D. Award costs as permitted by law; and

E. Grant such other and further relief as the Court deems just and proper.

DATED: 3/24 '26

Respectfully submitted,

James M. Rickher

Plaintiff, Pro Se

5161 SW Cameron Rd.

Portland, OR 97221

(510) 418-3996

rickher.james@gmail.com

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF — Rickher v. Sullivan, et al.    11