James M. Rickher

Plaintiff, Pro Se

5161 SW Cameron Rd.

Portland, OR 97221

(510) 418-3996

rickher.james@gmail.com

FILED 24 MAR '26 14:51 USDC-ORP

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

## PORTLAND DIVISION

**JAMES M. RICKHER,**

Plaintiff,

v.

**MEGAN SULLIVAN,** et al.,

Defendants.

3:26-cv-569 - AR

---

### PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

---

Plaintiff James M. Rickher respectfully moves this Court pursuant to Federal Rule of Civil Procedure 65 for a preliminary injunction enjoining Defendants from producing, distributing,

MOTION FOR PRELIMINARY INJUNCTION — Rickher v. Sullivan, et al.        1

issuing, or selling any coin bearing the likeness of President Donald J. Trump or any other living individual, pending final resolution of this action.

The grounds for this motion are set forth in the accompanying Memorandum of Law.

## MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

### I. INTRODUCTION

The United States Mint is on the verge of producing a 24-karat gold coin bearing the image of a sitting president — an act that Congress expressly prohibited over 150 years ago. On March 20, 2026, a Commission of Fine Arts composed entirely of Trump appointees unanimously approved the design. Production is imminent, with issuance targeted for the nation's Semi-quincentennial on July 4, 2026.

A preliminary injunction is not merely appropriate — it is urgent. Once the coins are struck and distributed, they cannot be recalled. The statutory safeguard Congress enacted to prevent executive self-glorification through the currency will be violated in a manner that defies any adequate legal remedy. The four factors governing preliminary injunctive relief all weigh decisively in Plaintiff's favor.

### II. LEGAL STANDARD

A plaintiff seeking a preliminary injunction must establish: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm absent preliminary relief; (3) that the balance of equities tips in the plaintiff's favor; and (4) that an injunction is in the public interest. Winter v. Natural Resources Defense Council, Inc., 555 U.S. 7, 20 (2008). In the Ninth Circuit, courts also

apply the "sliding scale" variant: where the movant raises "serious questions" on the merits, a preliminary injunction may issue if the other factors tip sharply in the movant's favor. Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1134–35 (9th Cir. 2011). All factors here favor Plaintiff under either standard.

## III. ARGUMENT

### A. Plaintiff Is Likely to Succeed on the Merits.

### 1. The Statutory Text Is Unambiguous.

Section 5114(b) provides, without qualification or exception: "Only the portrait of a deceased individual may appear on United States currency and securities." The statute admits of no ambiguity. It does not say "only the portrait of a deceased individual may appear on circulating currency" or "on coins issued pursuant to subsection X." It applies to United States currency and securities, period.

The Trump gold coin is United States currency. It is a 24-karat gold coin issued under statutory authority, bearing a denomination, and constituting legal tender for all debts. 31 U.S.C. § 5103. As such, it is unambiguously subject to § 5114(b)'s prohibition.

### 2. Section 5112's Grant of Discretion Does Not Override § 5114(b)'s Prohibition.

Defendants will argue that § 5112(i)(1)(C)'s grant of broad design discretion to the Secretary for gold bullion and proof coins authorizes the Secretary to determine who may appear on those coins. This argument fails for multiple independent reasons.

First, a general grant of authority does not override a specific prohibition. This is black-letter statutory construction: when a general provision conflicts with a specific one, the specific provision controls. RadLAX Gateway Hotel, LLC v. Amalgamated Bank, 566 U.S. 639, 645 (2012); Morton v. Mancari, 417 U.S. 535, 550–51 (1974). Section 5114(b) is a specific,

categorical prohibition on a discrete subject (portraiture of living persons). Section 5112(i)(1)(C) is a general grant of design discretion. The specific governs the general.

Second, the two provisions can and must be read in harmony. Section 5112 grants the Secretary discretion over specifications, designs, varieties, quantities, and denominations — all subject to the limitations imposed by other applicable law, including § 5114(b). Reading § 5112's discretion to include discretion to override § 5114(b) would render § 5114(b) a nullity with respect to an entire category of coins. Courts must avoid interpretations that render statutory provisions superfluous. TRW Inc. v. Andrews, 534 U.S. 19, 31 (2001).

Third, § 5112 contains its own specific prohibitions on depicting living persons in certain coin programs — for example, § 5112(l)(7)(E) prohibits portraits of living persons on State quarter-dollar coins. Congress knows how to carve out exceptions to the general living-persons prohibition when it intends to do so. It has not done so for the gold coin program at issue here. Expressio unius est exclusio alterius.

### 3. The "Bullion Coin" Characterization Does Not Save Defendants' Position.

Defendants will likely argue that the Trump coin is a "gold bullion" or "proof coin" sold at a premium above face value, not intended for general circulation, and therefore not "currency" within the meaning of § 5114(b). The argument fails at every level.

First, the statutory text forecloses it. Section 5114(b) prohibits living persons' portraits on "United States currency and securities" — not "circulating currency," not "coins intended for commerce," and not "everyday money." Congress chose a broad term without qualification. Courts may not engraft limitations onto unambiguous statutory text that Congress itself did not write. Lamie v. United States Trustee, 540 U.S. 526, 534 (2004). Had Congress intended to exempt bullion or proof coins from § 5114(b), it could have said so. It did not.

Second, the legal tender statute resolves any doubt. All United States coins, including gold bullion and proof coins issued under § 5112, are legal tender for all debts, public charges, taxes, and dues. 31 U.S.C. § 5103. A coin's collector market value above face value does not alter its legal character. A $50 American Eagle gold coin that trades at $2,500 remains, by law, legal tender for fifty dollars. The Trump coin will bear a denomination under § 5112 and will be legal tender upon issuance. It is United States currency within the meaning of § 5114(b) from the moment it is struck, regardless of whether any person ever spends it at face value. The point is not merely theoretical: a holder of the Trump coin could walk into any bank in the United States and deposit it, receiving the face value credited to their account. The bank would be legally obligated to accept it as currency at that denomination. No collector premium, no gold market price, and no "bullion product" label Defendants affix to the coin can extinguish that legal character. That is what it means to be legal tender and that is why § 5114(b) governs this coin.

Third, Defendants' bullion-coin theory proves too much. If § 5112's discretionary design authority wholly displaces § 5114(b) for gold bullion and proof coins, then the Secretary could place any living person's likeness on any such coin at any time, rendering the 160-year-old prohibition a dead letter across an entire statutory category of official United States coinage. That cannot be what Congress intended, and it is not what the statute says. An interpretation that reduces a specific, categorical prohibition to nullity must be rejected. TRW Inc. v. Andrews, 534 U.S. 19, 31 (2001).

Fourth, the Coolidge precedent, the only prior instance of a sitting president on a U.S. commemorative coin, does not help Defendants. That 1926 coin drew immediate controversy and was largely withdrawn from circulation. Far from establishing a settled practice that Congress has acquiesced in, the Coolidge episode was widely regarded as an aberration and has not been repeated in the century since. It provides no basis for concluding that § 5114(b) implicitly exempts gold proof or bullion coins.

MOTION FOR PRELIMINARY INJUNCTION — Rickher v. Sullivan, et al.      5

### 4. Post-Loper Bright, This Court Reviews the Question De Novo.

Prior to Loper Bright Enterprises v. Raimondo, 603 U.S. 369 (2024), Defendants might have argued for deference to their statutory interpretation. That avenue is now closed. Courts must exercise independent judgment on questions of statutory interpretation. Id. at 412. The question here, whether § 5112's design discretion overrides § 5114(b)'s absolute prohibition, is a pure question of law that this Court reviews de novo, with no deference owed to Defendants' self-serving interpretation.

### 5. The Historical Practice Confirms the Prohibition.

The prohibition was enacted in 1866 specifically to prevent executive officials from using the currency as an instrument of political self-promotion. In the 160 years since, no sitting president has lawfully appeared on United States currency. The single prior analogous instance, Calvin Coolidge on a 1926 commemorative coin, drew controversy and resulted in the coins being largely withdrawn from circulation, and that episode has not been identified by Defendants as providing a lawful precedent for the action challenged here.

### B. Plaintiff Will Suffer Irreparable Harm Absent an Injunction.

Irreparable harm is established where, as here, the injury cannot be adequately remedied by money damages or post-issuance relief. Once the Trump gold coins are struck, placed into the Mint's sales system, sold to collectors, and distributed, they cannot practicably be recalled from commerce. A post-judgment order requiring collection and destruction of coins already distributed would be logistically impossible to enforce and wholly inadequate to redress the statutory violation.

The harm is not merely practical but structural: the erosion of a statutory safeguard designed to prevent the executive branch from using sovereign instruments of value for political glorification is a species of institutional harm for which no retroactive remedy exists. The statute would be violated, and its deterrent force permanently compromised, the moment the first coin is struck.

MOTION FOR PRELIMINARY INJUNCTION — Rickher v. Sullivan, et al.      6

The target issuance date of July 4, 2026 makes relief urgent. Production will begin before that date, potentially within weeks.

## C. The Balance of Equities Favors Plaintiff.

Defendants face no cognizable hardship from a preliminary injunction. They have no lawful interest in issuing a coin that violates federal law. The government cannot claim equitable harm from being enjoined from acting unlawfully. Nken v. Holder, 556 U.S. 418, 435 (2009).

Any commercial or ceremonial interest in issuing the coin for the Semi-quincentennial is outweighed by the 160-year statutory prohibition that Congress enacted to preserve democratic norms. The equities tip sharply in Plaintiff's favor.

## D. The Public Interest Favors an Injunction.

"[I]t is always in the public interest to prevent the violation of a party's constitutional [and statutory] rights." Melendres v. Arpaio, 695 F.3d 990, 1002 (9th Cir. 2012) (citation omitted). The public interest is likewise served by enforcing Congress's judgment, which was expressed in a statute enacted in 1866 and reaffirmed through codification, that the currency of the United States shall not be used as an instrument of executive self-promotion or political elevation.

The Citizens Coinage Advisory Committee, the bipartisan advisory body whose institutional purpose is to safeguard the integrity of coin design, declined to consider this coin precisely because of concerns about its legality and its departure from democratic norms. The public interest is best served by this Court upholding those norms.

\ \ \

## IV. BOND

Plaintiff requests that this Court set a nominal bond, or waive the bond requirement, given that Defendants face no cognizable monetary harm from a brief delay in the production of a commemorative coin. The public interest in enjoining unlawful government action counsels against imposing a financial barrier on a pro se plaintiff seeking to enforce an unambiguous federal statute.

## V. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court grant a preliminary injunction enjoining Defendants from producing, distributing, issuing, or selling any coin bearing the likeness of President Donald J. Trump or any other living individual, pending final resolution of this action.

DATED: __3/24 '26__

Respectfully submitted,

James M. Rickher

Plaintiff, Pro Se

5161 SW Cameron Rd

Portland, OR 97221

(510) 418-3996

rickher.james@gmail.com