*filed*

~~RECVD~~ APR '26 3:57 USDC-ORP

James M. Rickher
Plaintiff, Pro Se
5161 SW Cameron Rd.
Portland, OR 97221
(510) 418-3996
rickher.james@gmail.com

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON
PORTLAND DIVISION

**JAMES M. RICKHER,**
Plaintiff,

v.                                                            **Case No. 3:26-cv-00569-AR**

**MEGAN SULLIVAN**, in her official capacity as Acting Chief,
Office of Design Management, United States Mint; and

**SCOTT BESSENT**, in his official capacity as Secretary of the Treasury,
Defendants.

---

## PLAINTIFF'S FIRST AMENDED MOTION FOR PRELIMINARY INJUNCTION

## AND MEMORANDUM OF LAW IN SUPPORT THEREOF

## EXPEDITED HEARING REQUESTED | REQUEST FOR ORAL ARGUMENT

---

Plaintiff James M. Rickher respectfully moves this Court pursuant to Federal Rule of Civil

Procedure 65 and Local Rule 65-1 for a preliminary injunction barring Defendants from producing,

distributing, issuing, selling, or otherwise placing into commerce any coin bearing the likeness of

President Donald J. Trump pending final resolution of this action. This First Amended Motion

FIRST AMENDED MOTION FOR PRELIMINARY INJUNCTION — Rickher v. Sullivan and Bessent, No. 3:26-cv-00569-AR

supersedes and replaces ECF No. 4, filed March 24, 2026, and corresponds to Plaintiff's First Amended Complaint filed concurrently herewith.

The grounds for this motion are set forth in the accompanying Memorandum of Law.

## MEMORANDUM OF LAW

## IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

### I. INTRODUCTION

The United States Mint is on the verge of producing a 24-karat gold coin bearing the image of face of a living man who is also the current President of the United States. The coin will be issued as legal tender, bearing a denomination and the full authority of the United States government. Federal law expressly and unambiguously forbids this and clearly states: "Only the portrait of a deceased individual may appear on United States currency and securities." 31 U.S.C. §5114(b).

Defendants' position is doubly defective. First, the specific categorical prohibition in §5114(b) controls over the general design-discretion grant in §5112(i)(4)(C) that Defendants invoke. Second, even if the Trump gold coin were characterized as a Semiquincentennial coin authorized under §5112(y) as authorized by the Circulating Collectible Coin Redesign Act of 2020, Pub. L. 116-330 (*hereinafter* CCCRA), Congress expressly and independently prohibited living persons on such coins in §5112(aa)(1), which was enacted simultaneously as part of the same legislative package. There is no statutory door through which this coin may lawfully pass.

A preliminary injunction is not merely appropriate; it is urgent. Once the coins are struck and distributed, they cannot be recalled. The target issuance date is on or before July 4, 2026 which means production is either underway or imminent. Every day of delay narrows the window for effective judicial relief.

## II. LEGAL STANDARD

A plaintiff seeking a preliminary injunction must establish: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm absent preliminary relief; (3) that the balance of equities tips in the plaintiff's favor; and (4) that an injunction is in the public interest. *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008). In the Ninth Circuit, a plaintiff may also obtain relief under the "serious questions" sliding scale if they demonstrate that serious questions going to the merits exist and the balance of hardships tips sharply in their favor, so long as the other Winter factors are also met. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134–35 (9th Cir. 2011). Plaintiff satisfies both standards. When the government is the opposing party, the balance of equities and public interest factors merge. *Nken v. Holder*, 556 U.S. 418, 435 (2009).

## III. ARGUMENT

### A. Plaintiff Is Likely to Succeed on the Merits.

### 1. The Statutory Text of §5114(b) Is Unambiguous.

Section 5114(b) provides, without qualification or exception: "Only the portrait of a deceased individual may appear on United States currency and securities." 31 U.S.C. §5114(b). The word "only" is categorical. The word "deceased" is unambiguous. The prohibition does not distinguish

between circulating and non-circulating coins, between denominated and un-denominated instruments, or between coins sold at face value and coins sold at a premium. It covers *all* United States currency and securities *without exception*.

The Trump gold coin as described will be United States currency. It is a 24-karat gold coin issued under statutory authority and required to bear a face value denomination and designated as legal tender under 31 U.S.C. §5103. It bears the portrait of President Donald J. Trump, a living individual and it falls squarely within §5114(b)'s prohibition.

Post-*Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024), this Court exercises independent judgment on this question of statutory interpretation. No deference is owed to Defendants' self-serving construction of the statute they are violating.

**2. Section 5112's Grant of Discretion Does Not Override §5114(b)'s Prohibition.**

Defendants will argue that §5112(i)(4)(C)'s grant of broad design discretion to the Secretary for gold bullion and proof coins authorizes the Trump gold coin. That argument fails on multiple independent grounds.

First, a general grant of authority does not override a specific prohibition. This is black-letter statutory construction: when a specific provision conflicts with a general one, the specific controls. *Morton v. Mancari*, 417 U.S. 535, 550–51 (1974); *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 645 (2012); *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 384–85

(1992). Section 5114(b)'s categorical prohibition is specific; §5112(i)(4)(C)'s design discretion grant is general. The specific prohibition controls.

Second, the two provisions can and must be read in harmony. Section 5112 grants the Secretary discretion over specifications, designs, varieties, quantities, denominations, and inscriptions. Section 5114(b) imposes a categorical constraint on whose portrait may appear. These provisions operate in different registers: §5112 governs the "how" of coin design; §5114(b) governs the "who." Reading them together, the Secretary has broad discretion in designing gold coins within the constraint that no living person's portrait may appear. There is no conflict requiring resolution just a constraint Defendants have chosen to ignore.

Third, reading §5112(i)(4)(C)'s discretion grant to override §5114(b)'s prohibition would render §5114(b) null and void with respect to an entire category of United States currency. A result the anti-surplusage canon forbids, as courts must give operative effect to every provision Congress enacts and may not interpret one provision to render another meaningless. *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001); *Lamie v. United States Trustee*, 540 U.S. 526, 534 (2004).

Fourth, §5112 itself contains explicit living person prohibitions in at least six separate coin programs; subsections (l)(4)(E), (n)(2)(E), (s)(3)(E), (t)(3)(F), (w)(4)(E), and (aa)(1). That Congress repeatedly enacted such prohibitions within §5112 confirms that it understood §5114(b)'s categorical prohibition as foundational and requiring consistent reinforcement. The only subsection lacking such explicit reiteration is §5112(i), enacted in 1985 before this legislative

pattern developed. That silence reflects historical timing, not congressional intent to exempt gold bullion coins from the prohibition that governs all other United States currency.

### 3. The Circulating Collectible Coin Redesign Act of 2020 Independently Prohibits the Trump Gold Coin.

Plaintiff's likelihood of success on the merits is independently established by a second statutory prohibition that Defendants cannot escape regardless of which authorization they invoke.

In 2021, Congress enacted the CCCRA, Pub. L. 116-330, which amended §5112 in ways directly relevant to this case. Section 3 of the CCCRA added §5112(y), which authorizes the Secretary to redesign any coin authorized under §5112 for issuance during the one-year period beginning January 1, 2026, "in celebration of the United States semiquincentennial." The Trump gold coin's target issuance date of on or before July 4, 2026 falls within this Semiquincentennial window, and Defendants have publicly framed the coin as a Semiquincentennial celebration. Section 5112(y) may therefore be asserted by Defendants as an alternative or supplemental basis for the coin's authorization.

Section 6 of the CCCRA, enacted simultaneously as part of the same integrated legislative package, added §5112(aa)(1), which provides: "No head and shoulders portrait or bust of any person, living or dead, and no portrait of a living person may be included in the design on the reverse of any coin under subsections (x), (y), and (z)." Subsection (y), which is the Semiquincentennial authority, *is explicitly listed*. Congress authorized Semiquincentennial

redesigns with one hand in Section 3 and prohibited living persons on those same coins with the other hand in Section 6, in the same Act, signed January 13, 2021.

The Trump gold coin is therefore prohibited under either statutory path Defendants may invoke. If authorized under §5112(i)(4)(C), it is prohibited by §5114(b). If authorized under §5112(y), it is independently prohibited by §5112(aa)(1). Defendants cannot invoke the CCCRA's Semiquincentennial authority as a sword to justify the issuance date while ignoring the shield of CCCRA's prohibition of living persons. There is no statutory door through which this coin may lawfully pass.

The CCCRA also defeats any negative implication argument Defendants might construct. Defendants cannot credibly argue that §5112(aa)(1)'s explicit prohibition implies §5114(b) is inapplicable to §5112(i) gold coins because the same argument would apply with equal force to the six other program-specific living person prohibitions Congress enacted before the CCCRA, none of which Defendants have ever argued displaced §5114(b). Congress adds these program-specific prohibitions as belt-and-suspenders reinforcements, not as substitutes for the general prohibition. The CCCRA changed nothing about the applicability of §5114(b); it simply confirmed that Congress's concern about living persons on official coinage extends even to the limited Semiquincentennial redesign authority.

### 4. The "Bullion Coin" Characterization Does Not Save Defendants' Position.

Defendants will likely argue that the Trump gold coin is a "gold bullion" or "proof coin" sold at a premium above face value, not intended for ordinary circulation, and therefore outside the scope

of §5114(b)'s prohibition on "United States currency and securities." This argument fails on every level.

First, the statutory text forecloses it. Section 5114(b) prohibits living persons' portraits on "United States currency and securities." It does not say "circulating currency," "currency used in ordinary commerce," or "coins issued under subsection (a)." The text is categorical and unqualified. *Lamie*, 540 U.S. at 534 (courts may not engraft limitations onto unambiguous statutory text).

Second, the legal tender statute resolves any doubt. All United States coins, including gold bullion and proof coins issued under §5112, are legal tender as provided in 31 U.S.C. §5103. A holder of the Trump gold coin could present it at any bank at face value. Its premium above face value, whether due to collectability or the spot price of gold (or whatever metal or material the coin's final construction takes on) does not alter its legal character as United States currency subject to §5114(b).

Third, Defendants' bullion-coin theory proves too much. If §5112's discretionary design authority wholly displaces §5114(b) for gold bullion and proof coins, then the Secretary could place any portrait on any gold coin without restriction: living politicians, foreign leaders, private individuals. Congress did not grant such authority, and no reasonable construction of §5112(i)(4)(C) supports it.

Fourth, the Coolidge precedent does not help Defendants. The only prior instance of a sitting president appearing on a United States commemorative coin was Calvin Coolidge in 1926, on a

coin issued by specific Act of Congress for the Sesquicentennial Exposition in Philadelphia. That coin was authorized by the legislative branch, not by unilateral executive action. It does not establish a precedent for what Defendants are doing here, and Congress has not repeated it in the century since. Should they want to reproduce that outcome Defendants should seek and obtain congressional legislation and approval for the production of the Trump gold coin.

**5. Post-Loper Bright, This Court Reviews the Question De Novo.**

Prior to *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024), Defendants might have argued for deference to their statutory interpretation under *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984). *Loper Bright* overruled *Chevron* and restored the courts' authority and obligation to independently determine what the law means. 603 U.S. at 412. This Court reviews the statutory question de novo. On de novo review, the answer is clear: §5114(b) means what it says, §5112(i)(4)(C) cannot override it, and §5112(aa)(1) independently confirms that living persons may not appear on Semiquincentennial coins. Plaintiff is likely to prevail.

**6. The Historical Practice Confirms the Prohibition.**

The prohibition was enacted in 1866 specifically to prevent executive officials from using the currency as an instrument of political self-promotion. Treasury Secretary Salmon P. Chase had placed his own portrait on federal currency and Congress responded with an absolute prohibition that was categorical, not discretionary. The House Office of Law Revision Counsel's Revisers' Notes to the 1982 recodification of Title 31 confirm that the modern text is substantively identical to the 1866 original. For 160 years, no executive official has claimed the authority to place a living

person's portrait on United States currency by unilateral action. Defendants' position would overturn that unbroken historical practice.

## B. Plaintiff Will Suffer Irreparable Harm Absent an Injunction.

Irreparable harm is established where, as here, the injury cannot be adequately remedied by money damages or post-issuance relief. Once the Trump gold coins are struck, distributed through the Mint's sales infrastructure, and placed into commerce, they cannot practicably be recalled. A court order requiring the collection and destruction of coins already sold to thousands of collectors worldwide would be both logistically impossible and practically unenforceable. The harm is permanent from the moment the first coin is struck.

The harm is not merely practical but structural: the erosion of a statutory safeguard designed to prevent the executive branch from using sovereign instruments of value for political self-promotion and self-glorification. That safeguard, once violated at this scale, cannot be restored by a post-hoc injunction. The 160-year historical record of compliance will have been broken and the deterrent value of the prohibition will have been permanently diminished.

The target issuance date of on or before July 4, 2026, makes relief urgent. This Court's own Discovery and Pretrial Scheduling Order sets a 120-day deadline of July 22, 2026 for completion of all pretrial and dispositive motions. That deadline falls eighteen days after the coin's target issuance date, at the latest. The standard litigation calendar will not preserve meaningful relief. An expedited hearing is the only path to an effective remedy. Plaintiff has filed a concurrently pending Motion to Expedite the PI Hearing for this reason.

The urgency is more acute than the nominal issuance date suggests, i.e. the production of 24-karat gold coins is a multi-stage industrial process: die fabrication, blank preparation, striking, quality inspection, packaging and website design, advertising campaign development, and packaging all precede distribution. A "very limited production run" does not commence the week before its launch date. If production has not already begun, it is days from beginning. Once the dies are struck and blanks are prepared, the window for meaningful pre-issuance relief narrows further still. The Court should not assume that July 4, 2026 is the operative deadline for purposes of this motion; *the operative deadline is the date production commences*, which may already have passed.

## C. The Balance of Equities Favors Plaintiff.

Defendants face no cognizable hardship from a preliminary injunction. They have no lawful interest in issuing a coin that violates a 160-year statutory prohibition. The government "cannot suffer harm from an injunction that merely ends an unlawful practice." *Rodriguez v. Robbins*, 715 F.3d 1127, 1145 (9th Cir. 2013). When the government is a party, "the balance of the equities and the public interest merge." *Nken v. Holder*, 556 U.S. 418, 435 (2009).

Any commercial or ceremonial interest in issuing the coin for the Semiquincentennial is outweighed by the 160-year statutory prohibition Congress enacted specifically to prevent this kind of executive self-promotion and self-glorification through the currency. Moreover, Congress's own legislation for the Semiquincentennial, the CCCRA, expressly prohibited living persons on Semiquincentennial coins. Defendants' asserted Semiquincentennial interest is not a legitimate interest Congress recognized; it is an interest Congress specifically foreclosed.

## D. The Public Interest Favors an Injunction.

"[I]t is always in the public interest to prevent the violation of a party's constitutional [and statutory] rights." *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012). The public has a direct interest in the integrity of its currency and in the enforcement of statutes Congress enacted to prevent executive self-aggrandizement and self-glorification through sovereign instruments of value.

The Citizens Coinage Advisory Committee (*hereinafter* CCAC), the bipartisan advisory body Congress created specifically to safeguard the democratic integrity of United States coin design, declined to consider the Trump gold coin because of concerns about its legality and its departure from the norms the CCAC exists to protect. On February 24, 2026, the CCAC held a scheduled public meeting at which the Trump gold coin was discussed and Mint legal counsel declined to address the committee's legal questions in that public forum. The Mint published and then removed the video recording of that public meeting. As of the date of this filing, the recording has not been restored and no transcript has been produced, notwithstanding representations by Mint officials that both would be forthcoming. The public interest in transparent government is directly implicated by the Mint's suppression of the official record of a federally mandated advisory body's deliberations. The reconstituted Commission of Fine Arts, composed entirely of Trump appointees, reconstituted just ten weeks before the vote, with at least one member simultaneously serving as a White House aide, approved the design unanimously. The public interest lies with the CCAC's judgment, not the Commission's.

The public interest also lies in judicial enforcement of the CCCRA. Congress specifically legislated for the Semiquincentennial in 2021, authorizing Semiquincentennial coin redesigns while simultaneously prohibiting living persons on those very coins. Defendants' end-run around both prohibitions contained in §5114(b) and §5112(aa)(1) is the kind of executive overreach the public interest demands this Court restrain.

## IV. BOND

Plaintiff requests that this Court set a nominal bond, or waive the bond requirement entirely, given that Defendants face no cognizable monetary harm from a preliminary injunction halting an unlawful action. Fed. R. Civ. P. 65(c). Courts regularly waive or minimize bond requirements in cases challenging government action where the plaintiff's likely success on the merits is strong and the government's asserted interest is legally deficient. *See California ex rel. Van de Kamp v. Tahoe Regional Planning Agency*, 766 F.2d 1319, 1325–26 (9th Cir. 1985).

## V. DECLARATION OF PLAINTIFF IN SUPPORT

## OF MOTION FOR PRELIMINARY INJUNCTION

I, James M. Rickher, declare under penalty of perjury pursuant to 28 U.S.C. §1746 that the following is true and correct:

1. I am the Plaintiff in the above-captioned action. I make this declaration in support of my Motion for Preliminary Injunction. I have personal knowledge of the facts stated herein and, if called as a witness, could and would testify competently thereto.

2. I am a novice collector of United States numismatic coins. I acquire and hold in United States coins and paper currency as part of an ongoing collecting practice. My collection includes coins across multiple series, denominations, and eras of United States coinage. I have an interest in developments in United States coin design, production, and policy as a regular part of my participation in this activity.

3. I became aware of the United States Mint's plans to issue a 24-karat gold coin bearing the likeness of President Donald J. Trump, a living individual, in or around early 2026. I have monitored publicly available information regarding the coin's development, including the Commission of Fine Arts' March 20, 2026 approval of the final design and Acting Chief Sullivan's public statements confirming the Mint's intent to proceed with production.

4. The planned issuance of the Trump gold coin has concretely affected my collecting activity. The introduction of an unlawfully issued coin bearing a living person's portrait into the official United States coinage disrupts the regulatory and taxonomic framework on which I rely in evaluating, acquiring, and holding coins. I regard that disruption as a concrete harm to the integrity of my existing collection and to my ongoing and future collecting practice.

5. I believe, based on my understanding of federal law and my knowledge of numismatic standards, that the issuance of the Trump gold coin violates 31 U.S.C. §5114(b) and, independently, 31 U.S.C. §5112(aa)(1). I brought this action to enforce those statutory protections and to prevent a harm that, once the coin is struck and distributed, cannot be undone.

6. I am aware that the target issuance date for the Trump gold coin is on or before July 4, 2026. I understand that the production of gold coins is a multi-stage process that must commence well in advance of the issuance date. I have basis to believe that production has already begun or is imminent. If the coin is produced and distributed before this Court can act, the harm I have described will be irreversible.

/ / /

## VI. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court grant a preliminary injunction enjoining Defendants, their officers, agents, servants, employees, contractors, and all persons in active concert or participation with them, from producing, distributing, issuing, selling, or otherwise placing into commerce any coin bearing the likeness of President Donald J. Trump, pending final resolution of this action.

Plaintiff further requests that the Court request oral argument on this motion pursuant to LR 7-1(f). This case presents significant questions of statutory interpretation and executive power that will benefit from focused argument before this Court.

The production of the Trump gold coin production is likely underway and July 4, 2026 is a fixed date in time. The Court's window to act is narrow and closing. Two independent statutory prohibitions contained in §5114(b) and §5112(aa)(1) foreclose what Defendants intend conduct and Plaintiff asks this Court to enforce them now, while meaningful relief remains available.

DATED: 4/7'26

Respectfully submitted,

James M. Rickher
Plaintiff, Pro Se
5161 SW Cameron Rd.
Portland, OR 97221
510 418.3996
RICKHER.JAMES@GMAIL.COM

FIRST AMENDED MOTION FOR PRELIMINARY INJUNCTION — Rickher v. Sullivan and Bessent, No. 3:26-cv-00569-AR
16