

James M. Rickher
Plaintiff, Pro Se
5161 SW Cameron Rd.
Portland, OR 97221
(510) 418-3996
rickher.james@gmail.com

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF OREGON
## PORTLAND DIVISION

**JAMES M. RICKHER,**
Plaintiff,

v.

**Case No. 3:26-cv-00569-AR**

**MEGAN SULLIVAN**, in her official capacity as Acting Chief,
Office of Design Management, United States Mint; and

**SCOTT BESSENT**, in his official capacity as
Secretary of the Treasury,
Defendants.

---

### FIRST AMENDED COMPLAINT FOR DECLARATORY
### AND INJUNCTIVE RELIEF

Filed Pursuant to Fed. R. Civ. P. 15(a)(1)(B)

## I. INTRODUCTION

1. This action challenges the United States Mint's (*hereinafter* Mint) approval and imminent

   issuance of a 24-karat gold commemorative coin bearing the likeness of President Donald

   J. Trump (*hereinafter* Trump gold coin), a living individual, in direct violation of federal

   law.

FIRST AMENDED COMPLAINT — Rickher v. Sullivan and Bessent, No. 3:26-cv-00569-AR     1

2.  Federal law is unambiguous: "Only the portrait of a deceased individual may appear on United States currency and securities." 31 U.S.C. §5114(b). This prohibition has governed United States coinage for over 160 years and admits of no exception.

3.  On or about March 20, 2026, the United States Commission of Fine Arts (*hereinafter* CFA) approved the final design for a 24-karat gold coin bearing the likeness of President Trump for issuance on or before July 4, 2026.

4.  The Mint has publicly confirmed it intends to proceed with production under the purported authority of 31 U.S.C. §5112(i)(4)(C). Defendants' assertion of authority under §5112 is doubly defective. First, the specific categorical prohibition in §5114(b) controls over the general design-discretion grant in §5112(i)(4)(C). Second, even if the Trump gold coin were characterized as a semiquincentennial coin authorized under §5112(y), added by the Circulating Collectible Coin Redesign Act of 2020, Pub. L. 116-330 (*hereinafter* CCCRA), Congress expressly and independently prohibited living persons on such coins in §5112(aa)(1), enacted simultaneously as part of the same legislative package.

5.  Defendants' attempt to use design-discretion provisions outlined in §5112 to circumvent the absolute prohibition on depicting living individuals on United States currency and securities violates both §5114(b) and, independently, §5112(aa)(1).

6. Once the Trump gold coin is produced and issued, it cannot meaningfully be recalled. Plaintiff seeks declaratory and injunctive relief to prevent that irreversible harm.

## II. JURISDICTION AND VENUE

7. This Court has subject-matter jurisdiction under 28 U.S.C. §1331 (federal question).

8. Declaratory relief is authorized under 28 U.S.C. §§2201–2202.

9. This action arises under the Administrative Procedure Act ("APA"), 5 U.S.C. §§701–706, and presents a pure question of statutory interpretation subject to de novo review. *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024).

10. Venue is proper in this District under 28 U.S.C. §1391(e)(1) because Plaintiff resides in Portland, Oregon.

## III. PARTIES

11. Plaintiff James M. Rickher is a United States citizen residing in Portland, Oregon. Plaintiff brings this action pro se. He is a novice collector of United States numismatic coins who acquires and holds coins and paper currency as part of a collecting practice. He has a direct and particularized interest in the integrity of the regulatory framework governing United States coinage, and he suffers concrete injury from the Defendants' unlawful conduct as described in the Standing section below.

12. Defendant Megan Sullivan is the Acting Chief of the Office of Design Management at the United States Mint. In that capacity, she is responsible for approving coin designs and has confirmed the Mint's intent to proceed with production of the Trump gold coin. She is sued in her official capacity.

13. Defendant Scott Bessent is the Secretary of the Treasury (*hereinafter* Secretary). He authorized the Trump gold coin and personally presented design options of the Trump gold coin to President Trump. He is sued in his official capacity.

## IV. STATUTORY AND HISTORICAL BACKGROUND

### A. The 160-Year Prohibition on Living Persons' Portraits

14. The prohibition on depicting living persons on United States money originates from an Act of Congress in 1866, enacted specifically to prevent Treasury Secretary Salmon P. Chase from keeping his own portrait on federal currency. The original statute provided that "no portrait of a living person shall hereafter be placed upon any of the bonds, securities, notes, fractional or postal currency of the United States." Act of Apr. 7, 1866, ch. 39, 14 Stat. 12.

15. Congress deliberately excluded executive discretion from this domain by establishing an absolute prohibition. The statute has been continuously in force, in substantively identical form, for over 160 years.

16. The modern codification, 31 U.S.C. §5114(b), provides: "United States currency has the inscription 'In God We Trust' in a place the Secretary decides is appropriate. *Only the*

*portrait of a deceased individual may appear on United States currency and securities.* (emphasis added) The name of the individual shall be inscribed below the portrait." The House Office of Law Revision Counsel's Revisers' Notes to the 1982 recodification of Title 31 confirm that "Only … of a deceased individual" was substituted for "No … while the original of such portrait is living" for clarity only; the operative prohibition is identical to the 1866 original.

## B. The §5112 Design Discretion Grant and Its Limits

17. A separate provision, 31 U.S.C. §5112(i)(4)(C), grants the Secretary broad discretion over "program procedures and coin specifications, designs, varieties, quantities, denominations, and inscriptions" for gold bullion and proof coins. This is the provision Defendants invoke as authority for the Trump gold coin.

18. The discretionary design authority in §5112 does not confer authority to override the absolute prohibition in §5114(b). A specific categorical prohibition controls over a general grant of discretion. *Morton v. Mancari*, 417 U.S. 535, 550–51 (1974); *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 645 (2012). Reading §5112(i)(4)(C)'s discretion grant to override §5114(b)'s prohibition would render §5114(b) a nullity — a result the anti-surplusage canon forbids, as courts must give operative effect to every provision Congress enacts and may not interpret one provision to render another meaningless. *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001).

19. Commemorative gold coins authorized or issued under §5112 bear a denomination, are issued as legal tender, and constitute "United States currency and securities" within the plain meaning of §5114(b). *See* 31 U.S.C. §5103 (all United States coins are legal tender). A holder of the Trump gold coin could deposit it at any bank at face value. Its market premium above face value, either due to collectability or the spot price of the material of which it's been minted, does not alter its legal character.

20. No Act of Congress authorizes the issuance of a coin bearing the likeness of a living individual, and no provision of §5112 purports to exempt gold bullion or proof coins from §5114(b)'s categorical prohibition.

21. Defendants are expected to argue that the Trump gold coin falls outside §5114(b) because it is a "gold bullion" or "proof" coin sold at a market premium rather than a "circulating" coin. This argument fails for the reasons set forth in paragraphs 22 -25.

22. Section 5114(b) prohibits living persons' portraits on "United States currency and securities." It does not say "circulating currency," "currency used in ordinary commerce," or "coins issued under subsection (a)." The text is categorical and unqualified.

23. As a matter of law, all United States coins, including gold bullion and proof coins issued under §5112, are legal tender as provided in 31 U.S.C. §5103. *See also* 31 U.S.C. §5112(aa)(4) ("The coins minted under subsections (x), (y), and (z) shall be legal tender,

as provided in section 5103."). The Trump gold coin will bear a denomination. It is United States currency within the meaning of §5114(b).

24. The bullion coin characterization also proves too much. If Defendants' theory were correct, that §5112's discretionary design authority wholly displaces §5114(b) for gold bullion and proof coins, then the Secretary could place *any* portrait on *any* gold coin without restriction: living politicians, foreign leaders, or private individuals. Congress did not grant such authority, and no reasonable construction of §5112(i)(4)(C) supports it.

25. The only prior instance of a sitting president appearing on a United States commemorative coin was Calvin Coolidge in 1926, issued for the Sesquicentennial Exposition in Philadelphia. That coin, issued by specific Act of Congress, does not establish a precedent for unilateral executive action, and Congress has not repeated it in the century since.

## C. The Circulating Collectible Coin Redesign Act of 2020

26. In 2021, Congress enacted the Circulating Collectible Coin Redesign Act of 2020 ("CCCRA"), Pub. L. 116-330, Jan. 13, 2021, 134 Stat. 5101. The CCCRA amended 31 U.S.C. §5112 by adding new subsections governing three new coin programs and establishing general standards applicable to all three.

27. Section 3 of the CCCRA added §5112(y), which authorizes the Secretary to redesign any coin authorized under §5112 for issuance during the one-year period beginning January 1, 2026, "in celebration of the United States semiquincentennial." The Trump gold coin's

target issuance date of July 4, 2026 — the nation's 250th anniversary — falls within this Semiquincentennial window, and Defendants have publicly framed the coin as a Semiquincentennial celebration. Section 5112(y) may therefore be asserted as an alternative or supplemental basis for the coin's authorization.

28. Section 6 of the CCCRA, enacted simultaneously and as part of the same integrated legislative package, added §5112(aa). Section 5112(aa)(1) provides: "No head and shoulders portrait or bust of any person, living or dead, **and no portrait of a living person** may be included in the design on the reverse of any coin under subsections (x), (y), and (z)." (Emphasis added.) Subsection (y) — the Semiquincentennial authority — is explicitly listed.

29. The CCCRA thus independently and expressly prohibits the Trump gold coin if that coin is characterized as a Semiquincentennial coin under §5112(y). Congress gave the Secretary Semiquincentennial redesign authority in Section 3 and simultaneously prohibited living persons on those very coins in Section 6, in the same Act, signed the same day.

30. The CCCRA also reinforces the broader statutory prohibition in §5114(b). Congress has now enacted explicit living person prohibitions in at least seven separate coin programs within §5112 — subsections (l)(4)(E), (n)(2)(E), (s)(3)(E), (t)(3)(F), (w)(4)(E), and (aa)(1) (covering subsections (x), (y), and (z)). This consistent legislative pattern demonstrates that Congress understood §5114(b)'s categorical prohibition as foundational and repeatedly reinforced it across every new coin program. The only program lacking such explicit

reiteration is the pre-existing §5112(i) program, enacted in 1985 before this legislative pattern developed — a function of historical timing, not of congressional intent to exempt gold bullion coins from the prohibition governing all other United States currency and securities.

31. The Trump gold coin is therefore prohibited under either statutory path Defendants may invoke. If the coin is authorized under §5112(i)(4)(C), it is prohibited by §5114(b). If the coin is authorized under §5112(y), it is independently prohibited by §5112(aa)(1). There is no statutory door through which this coin may lawfully pass.

## V. STANDING

32. Plaintiff has standing under Article III of the Constitution. He suffers a concrete, particularized, and actual injury in fact that is fairly traceable to Defendants' conduct and that would be redressed by the relief sought. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992).

33. Plaintiff is a collector of United States numismatic coins who acquires, holds, and transacts in coins as part of an active collecting practice. The unlawful issuance of the Trump gold coin causes Plaintiff concrete injury in the following respects, among others: (a) market integrity harm, as the introduction of an unlawfully issued coin into the numismatic market corrupts the regulatory and taxonomic framework on which Plaintiff relies in making collecting decisions and that underpins the value of his existing collection; (b) forced transactional harm, as Plaintiff as an active market participant will be compelled to make

affirmative decisions regarding the unlawful coin, i.e. whether to acquire, avoid, or respond to it, in a market that should not contain it; (c) chilling harm, as the uncertainty created by Defendants' unlawful conduct has already altered Plaintiff's present collecting activity; and (d) dignitary harm, as a numismatic stakeholder, from the government's use of the sovereign coinage system to perpetuate a violation of a statutory protection enacted to prevent exactly this kind of executive self-promotion through the currency.

34. Plaintiff's injury is imminent. The Commission of Fine Arts approved the final coin design on March 20, 2026. Acting Chief Sullivan has publicly confirmed that the Mint will proceed with production. The target issuance date is July 4, 2026.

35. The injury is fairly traceable to Defendants' decision to authorize and produce the coin in violation of §5114(b) and, independently, §5112(aa)(1).

36. The injury would be redressed by declaratory and injunctive relief halting production and issuance.

## VI. FACTUAL ALLEGATIONS

37. The United States Mint operates under the authority of the Department of the Treasury.

38. The Office of Design Management, headed by Defendant Sullivan, is responsible for developing and approving coin designs for the United States Mint.

39. In or around late 2025, the Treasury Department began developing designs for a gold commemorative coin bearing the image of President Donald J. Trump, a living individual and the current President of the United States.

40. The proposed coin is based on an official White House photograph of President Trump taken by his chief White House photographer.

41. Secretary Bessent personally presented coin design options to President Trump. Trump selected the final design. Sullivan confirmed the Mint's intent to proceed.

42. On February 24, 2026, the Citizens Coinage Advisory Committee (*hereinafter* CCAC), the CCAC held a public meeting. The CCAC is bipartisan advisory panel that normally reviews new coin designs. During the meeting, CCAC members raised questions about the legality of the proposed coin and the statutory authority under which it was being issued. CCAC Board Member Kellen Hoard, writing in his personal capacity, recounted the following regarding the February 24, 2026 meeting:

> "…there have been a series of last-minute changes to coin designs for the semiquincentennial. This includes changes to the semiquincentennial quarters, the proposal of a $1 coin depicting the current president, and, most recently, the proposal of an additional gold coin featuring the current president. A number of these changes have raised concern among committee members for various reasons. For instance, the committee was never, as was required by law, allowed to review the new themes and designs for the quarters, and there were various legal/artistic/precedential questions raised by some members about circulating coins featuring any current, living president. However, there had not been a substantive opportunity to publicly ask any of these questions and seek clarity from the Mint prior to this meeting. Consequently, at the beginning of the meeting, I spent about 15 minutes asking the Mint about their decision-making

processes on those coins, as well as, separately, recent changes to the pricing of Mint products." Kellen Hoard, *Citizens Coinage Advisory Committee Meeting Recap (February 2026)*, Collectors Universe Forums (Mar. 16, 2026, 6:41 AM), https://forums.collectors.com/discussion/1121602 (last visited Apr. 3, 2026).

During the meeting legal counsel for the U.S. Mint declined to address the committee's legal questions in that public forum. The CCAC declined to consider the coin, citing concerns about its legality and its departure from the democratic norms the committee exists to protect. The Mint published a video recording of the February 24 public meeting to its official website but subsequently removed it. As of the date of this filing, the recording has not been restored and no transcript has been produced, notwithstanding representations by Mint officials that both would be forthcoming. The suppression of the public record of a federal advisory body's deliberations regarding this coin is itself a matter of public record and bears directly on the adequacy of the administrative process Defendants have conducted.

43. On March 20, 2026, the Commission of Fine Arts (*hereinafter* CFA), comprised exclusively of Trump appointees, approved the final coin design by unanimous vote. At the CFA meeting, Acting Chief Sullivan represented that the design approval rested on the Secretary's authority under 31 U.S.C. §5112, not on the semiquincentennial redesign authority added by the CCCRA. That representation is consistent with Defendants' anticipated litigation position and confirms that §5114(b)'s specific prohibition is directly at issue.

Case 3:26-cv-00569-AR    Document 7    Filed 04/07/26    Page 13 of 19

44. The composition and recent history of the Commission that approved the coin design warrants particular note. Prior to the vote, all six sitting members of the Commission of Fine Arts were summarily terminated. A new Commission, composed entirely of individuals appointed by President Trump, was reconstituted approximately ten weeks before the March 20 vote. At least one member of the reconstituted Commission, Commissioner Harris, simultaneously served as a White House Oval Office aide at the time of the vote.

45. The approved design features Trump in a suit and tie, leaning forward with fists on a desk, with "LIBERTY" arced across the top of the obverse. The coin will bear a denomination and will constitute legal tender under 31 U.S.C. §5103.

46. Acting Chief Sullivan confirmed that the coin will be issued in a "very limited production run." The coin will bear a denomination and will be issued as legal tender under 31 U.S.C. §5103. The denomination, whatever its face amount, confirms the coin's legal character as United States currency subject to §5114(b).

47. U.S. Treasurer Brandon Beach confirmed in a public statement that the Mint intends to proceed with production.

48. Defendants have acknowledged that federal law generally bars living individuals from appearing on United States currency, but have asserted that the Trump gold coin falls

FIRST AMENDED COMPLAINT — Rickher v. Sullivan and Bessent, No. 3:26-cv-00569-AR    13

outside that prohibition because it is a "gold bullion" or "proof" coin. As set forth in Section IV above, that characterization is legally incorrect under both §5114(b) and §5112(aa)(1).

49. The coin, once issued, will constitute official United States legal tender and will form part of the official coinage of the United States. It cannot practicably be recalled once struck and distributed. The harm from its issuance is irreversible.

## VII. FIRST CLAIM FOR RELIEF

**Violation of the APA — Agency Action Contrary to Law**

*5 U.S.C. §706(2)(A), (C) | Violation of 31 U.S.C. §5114(b)*

50. Plaintiff realleges and incorporates paragraphs 1 through 49.

51. The Commission of Fine Arts' approval of the Trump gold coin design on March 20, 2026, and Defendants' decision to proceed with production and issuance of the Trump gold coin, constitute final agency actions within the meaning of the APA. *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997).

52. Defendants' approval and intended issuance of the Trump gold coin is contrary to law under 31 U.S.C. §5114(b), in excess of statutory authority, and without observance of procedures required by law, within the meaning of 5 U.S.C. §706(2)(A) and (C).

53. Section 5112's grant of design discretion does not authorize, and cannot be read to authorize, a design that violates §5114(b)'s categorical prohibition. Post-*Loper Bright*, this Court reviews the question of statutory authority de novo. No deference is owed to Defendants' self-serving construction.

54. Plaintiff is entitled to relief under the APA, including vacating any agency action taken in furtherance of the approval, production, or issuance of the Trump gold coin, and injunctive relief barring further action in violation of §5114(b).

## VIII. SECOND CLAIM FOR RELIEF

**Ultra Vires Agency Action — Non-Statutory Review**

*Violation of 31 U.S.C. §5114(b)*

55. Plaintiff realleges and incorporates paragraphs 1 through 54.

56. Federal officers acting beyond the scope of authority granted by Congress may be enjoined as acting ultra vires. *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 689–91 (1949); *Dugan v. Rank*, 372 U.S. 609, 621–22 (1963); *Chamber of Commerce v. Reich*, 74 F.3d 1322, 1328 (D.C. Cir. 1996).

57. By authorizing a coin bearing the likeness of a living person in direct contravention of 31 U.S.C. §5114(b), Defendants have acted beyond any authority Congress has granted and in direct violation of a statutory command. Section 5112(i)(4)(C)'s design-discretion grant

does not, and cannot, confer authority to violate §5114(b). *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 384–85 (1992).

58. Defendants' actions are ultra vires and subject to injunctive relief on that independent basis.

## IX. THIRD CLAIM FOR RELIEF

### Violation of the APA — Agency Action Contrary to Law

*5 U.S.C. §706(2)(A), (C) | Independent Violation of 31 U.S.C. §5112(aa)(1)*

59. Plaintiff realleges and incorporates paragraphs 1 through 58.

60. This Third Claim is pled in the alternative. To the extent Defendants contend that the Trump gold coin is authorized as a semiquincentennial coin under 31 U.S.C. §5112(y), as added by Section 3 of the CCCRA, Pub. L. 116-330, the coin is independently prohibited by 31 U.S.C. §5112(aa)(1).

61. Section 5112(aa)(1) provides: "No head and shoulders portrait or bust of any person, living or dead, and no portrait of a living person may be included in the design on the reverse of any coin under subsections (x), (y), and (z)." Subsection (y) is explicitly listed.

62. Section 5112(aa)(1) was enacted by Section 6 of the CCCRA, simultaneously with Section 3's grant of semiquincentennial redesign authority under §5112(y). The two provisions are part of an integrated legislative package. Congress authorized semiquincentennial coin

redesigns with one hand in Section 3 while expressly prohibiting the appearance of the portrait of a living person on those same coins with the other hand in Section 6 of the same Act enacted the very same day, January 13, 2021.

63. The intended Trump gold coin bears the portrait of a living person, i.e. President Donald J. Trump. If the coin is a §5112(y) semiquincentennial coin, its design violates §5112(aa)(1) on its face. Defendants cannot invoke the CCCRA's semiquincentennial authority as a sword while ignoring the shield which is the CCCRA's living person prohibition.

64. Defendants' approval and intended issuance of the Trump gold coin under any asserted §5112(y) authority is contrary to law under 31 U.S.C. §5112(aa)(1), in excess of statutory authority, and without observance of procedures required by law, within the meaning of 5 U.S.C. §706(2)(A) and (C).

65. Plaintiff is entitled to relief under the APA on this independent ground, including vacating any agency action taken in furtherance of the approval, production, or issuance of the Trump gold coin under §5112(y), and injunctive relief barring further action in violation of §5112(aa)(1).

/ / /

## X. IRREPARABLE HARM

66. Defendants' unlawful action is causing and will continue to cause irreparable harm.

67. Once struck, distributed, and placed into the stream of commerce, the coins cannot practicably be recalled. The harm is irreversible from the moment the first coin is struck. No monetary remedy can adequately compensate for the permanent violation of a 160-year statutory protection, the corruption of the numismatic regulatory framework, or the irreversible introduction of an unlawfully issued coin into the official coinage of the United States.

68. There is no adequate remedy at law.

## XI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

Declare that Defendants' approval and intended issuance of a 24-karat gold coin bearing the likeness of President Donald J. Trump violates 31 U.S.C. §5114(b) and, independently and in the alternative, 31 U.S.C. §5112(aa)(1);

Preliminarily and then permanently enjoin Defendants, their officers, agents, servants, employees, and all persons in active concert or participation with them, from producing, distributing, issuing, selling, or otherwise placing into commerce any coin bearing the likeness of President Donald J. Trump;

Set aside as unlawful, under 5 U.S.C. §706(2)(A) and (C), any agency action taken in furtherance

of the approval, production, or issuance of such coin;

Award costs as permitted by law; and

Grant such other and further relief as the Court deems just and proper.

DATED: __4/7 '26__

Respectfully submitted,

James M. Rickher
Plaintiff, Pro Se
5161 SW Cameron Rd.
Portland, OR 97221
(510) 418-3996
rickher.james@gmail.com